IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN W. JOSKY, )
)
    Plaintiff, )
)
v. ) Case No. 3:17-cv-01227
) Judge Trauger/Frensley
ASURION CORP., et al., )
)
    Defendants. )

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Asurion Corporation ("Asurion") and William Baskerville ("Defendants"). Docket No. 19. The other two original defendants have previously been dismissed. Docket No. 5. Defendants have also filed supporting materials, including: a Supporting Memorandum of Law (Docket No. 20); a Statement of Undisputed Facts (Docket No. 21); the deposition transcript of the Plaintiff, John Josky (Docket No. 22-1); and the Declaration of Mr. Baskerville (Docket No. 22-2).

In this employment discrimination case, Mr. Josky alleges that his former employer, Asurion, along with Mr. Baskerville and two others now dismissed, discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) ("Title VII"). Docket No. 1, p. 1-2. Mr. Josky also alleges that Defendants discriminated against him based on disability. *Id.* at 3. While Mr. Josky does not identify a particular statutory violation, the Court will (as Defendants have) construe this to be a claim of discrimination in

violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("the ADA").

Specifically, Mr. Josky alleges:

> Harresment [*sic*] constanlely [*sic*] while employed at Asurion
> starting July – November through email, and verbal Harresment
> [*sic*].
>
> . . .
>
> [D]iscriminated against by color, disability when William
> Baskerville, started as help manager, he started harressing [*sic*] me,
> and trying to find ways to fire me from my position as help desk
> analysit [*sic*] at Asurion through email, verbal comment (out of all
> people on the team BJ feels that you're weak.)

*Id.* at 3. Defendants deny Mr. Josky's allegations and assert that he cannot make out a prima facie case of discrimination on the basis of either race or disability. Docket No. 20.

## II. Law and Analysis

### A. Motions for Summary Judgment

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party bringing the motion has the burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute of material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Electric*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986); *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to allow the nonmoving party's claims to survive summary judgment; rather, the nonmoving party must convince the Court that there is sufficient evidence for a juror to return a verdict in its favor. *Id.*

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937 (2009) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Further, "a Court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011). *See also Payne v. Sec'y of Treas.*, 73 F.App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her."

**B. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion,

> unless otherwise ordered by the Court. Failure to file a timely
> response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on June 15, 2018. Docket No. 19. Mr. Josky has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record . . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Mr. Josky has failed to respond to Defendants' Statement of Undisputed Facts or to file his own Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Mr. Josky's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact, and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

It would be inappropriate to grant Defendants' Motion solely on the ground that Mr. Josky has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Court of Appeals for the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his

> initial] burden . . . . The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed above.

## C. Claims Against Mr. Baskerville

Defendants argue that all claims against Mr. Baskerville should be dismissed with prejudice, because neither the ADA nor Title VII provide for individual liability. Docket No. 20, p. 6. Defendants are correct in their assertion regarding individual supervisor liability under those statutes. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999) (individual supervisors who do not independently qualify under the statutory definition of employers not personally liable under the ADA); *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997) ("an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII"); *see also Hamido v. Tenn. State Univ.*, No. 3:16-02733, 2018 U.S. Dist. LEXIS 31630 at *3-4 (M.D. Tenn. Feb. 27, 2018). Mr. Josky does not attempt to establish that Mr. Baskerville satisfies the definition of "employer" under Title VII or the ADA. Accordingly, Mr. Josky's claims against Mr. Baskerville should be DISMISSED.

## D. Mr. Josky's Claim of Racial Discrimination Under Title VII

Title VII prohibits discrimination by employers against individuals based on race, color, sex, religion, or national origin. 42 U.S.C. § 2000(e)-2(a)(1). A plaintiff may establish a discrimination claim by introducing direct evidence of discrimination or by "proving circumstantial evidence which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F. 3d 561, 572 (6th Cir. 2000). If a plaintiff takes the circumstantial evidence approach, "the familiar McDonnell Douglas-Burdine tripartite test is employed." *Id.*, *citing*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981). This test requires the plaintiff to establish a prima facie case of discrimination, as described below. If the plaintiff is able to do so, "a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 573 (internal quotation marks and citation omitted). If the defendant articulates such a reason, the burden shifts back to the plaintiff to prove that the proffered nondiscriminatory reason "was actually a pretext to hide unlawful discrimination." *Id.*

In order to establish a prima facie case of discrimination under the circumstantial evidence approach, a plaintiff must show:

> 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Id.* at 572-73.

Mr. Josky has not provided direct evidence of race discrimination; therefore, the Court will examine the factors listed above to determine whether Mr. Josky has established a prima facie case. Regarding the first factor, although he alleges he was discriminated against on the basis of race, nowhere in Mr. Josky's Complaint does he allege that he is a member of a protected class. *See* Docket No. 1. Construing the facts in the light most favorable to Mr. Josky, he has satisfied the second factor by alleging that he was qualified for his job and performed it satisfactorily. *Id.* at 12 (describing his employment at Asurion from January through June 2016 working under a different supervisor, and implying that no one raised any issues with his performance during that time).

Mr. Josky's Complaint does not, however, identify an adverse employment action. *See* Docket No. 1. Although he alleges that Mr. Baskerville was "trying to find ways to fire me," he does not allege that he was actually fired or demoted. *Id.* at 3. Instead, it is undisputed that Mr. Josky resigned from Asurion after being away from work on Short Term Disability leave ("STD") for approximately five months. Docket No. 21, p. 8-9. To the extent that Mr. Josky alleges that he was constructively discharged, he has not set forth facts that would establish such a claim, even taking all allegations in the light most favorable to Mr. Josky. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit, and the employee must actually quit." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Regarding Mr. Josky's complaints about his working conditions, the following undisputed facts are relevant:

> In July 2015, Plaintiff alleges that Mr. Baskerville made inappropriate facial expressions towards him.
>
> Plaintiff alleges that Mr. Baskerville's inappropriate facial expression was a frown, and a smeary smile or silly smirk.
>
> Plaintiff alleges that Mr. Baskerville made similar facial expressions to him on one other occasion.
>
> Mr. Baskerville did not say anything to Plaintiff when he made these facial expressions.
>
> Between January and July 2015, there were a couple of instances of Plaintiff being late to work.
>
> In July 2015, Mr. Baskerville made a comment to Plaintiff that his attendance was "going to cause [Mr. Baskerville] to do something."
>
> Plaintiff considered Mr. Baskerville's comment to be harassing.

7

In July 2015, Plaintiff reported Mr. Baskerville's comments to Human Resources representative Amy Sutton.

Ms. Sutton recommended that Plaintiff speak with Mr. Baskerville and Mr. Baskerville's supervisor Jason Little about Mr. Baskerville's comments to get some clarification.

Plaintiff emailed Mr. Little and Mr. Baskerville for clarification.

Mr. Little responded that if no one had talked to Plaintiff about his attendance, then he was fine.

Mr. Baskerville responded and agreed with Mr. Little's response.

After Plaintiff received responses from Mr. Little and Mr. Baskerville, he considered the matter resolved and was no longer concerned that his job was in jeopardy.

On August 18, 2015, Plaintiff reported late to work.

On a Sunday in September 2015, Plaintiff fell ill at work and left work during his shift.

Plaintiff could not work his next shift on Monday and let Mr. Wiseman [another supervisor] know.

The following day (Tuesday), Plaintiff received a text from Mr. Baskerville asking why Plaintiff was a no call/no show for work.

Plaintiff responded by text to Mr. Baskerville that he was home sick.

Mr. Baskerville texted Plaintiff back and said "oh, thank you for replying."

. . .

On September 15, 2015, Plaintiff was 20 minutes late to work due to traffic.

Mr. Baskerville sent Plaintiff an email asking him why he was a no call/no show, and that based on his past attendance issue that termination was right around the corner.

. . .

In October 2015, Plaintiff and Mr. Wiseman met for a one on one meeting, and Mr. Wiseman told Plaintiff that Mr. Baskerville thought out of all the people on the team that Plaintiff was weak.

Plaintiff asked if he was being terminated, and Mr. Wiseman told him that he was far from termination.

. . .

Mr. Baskerville emailed Plaintiff after Plaintiff filed for STD and asked him "are you coming back to work and what's going on?"

Plaintiff responded to Mr. Baskerville's email and asked him whether he knew that Plaintiff had filed for STD.

Mr. Baskerville responded to Plaintiff's email confirming that he had been notified of the request for STD and asking whether Plaintiff would be working that weekend.

Plaintiff did not respond to Mr. Baskerville's email.

Plaintiff never returned to work from STD.

. . .

In March 2016, Plaintiff learned that Mr. Baskerville had taken his nametag from his desk and placed i[t] on the "Wall of Shame" with the nametags of former employees.

Plaintiff considered posting his nametag on the Wall of Shame while he was still employed to be improper action by Mr. Baskerville.

Mr. Baskerville also turned off Plaintiff's work computer account.

Plaintiff felt like Mr. Baskerville had a vendetta against him.

Plaintiff does not know why Mr. Baskerville interacted with him in the manner Mr. Baskerville did.

Plaintiff does not know if Mr. Baskerville's interactions with him were anything more than Mr. Baskerville trying to manage him.

The only person Plaintiff believed was threatening his position was Mr. Baskerville.

> The only person Plaintiff believes acted improperly towards him was Mr. Baskerville.
>
> Plaintiff's claim against Asurion is based solely on Mr. Baskerville's actions.

Docket No. 21, p. 3-11 (numbering, internal citations, and response prompts omitted). [1]

Even construing the facts in the light most favorable to Mr. Josky, the undisputed facts do not show that the conduct of Mr. Baskerville, upon which Mr. Josky's claims are entirely based, created intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the Mr. Josky to quit. Instead, the facts establish that Mr. Baskerville questioned Mr. Josky regarding his attendance, once stated to another supervisor that Mr. Josky was a weak member of the team, and on two occasions made facial expressions toward Mr. Josky that were either a frown, a smeary smile, or a silly smirk. Thus, the facts alleged do not support a claim of constructive discharge. Finally, Mr. Josky has not alleged that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *See* Docket No. 1.

To the extent that Mr. Josky intended to plead a claim of hostile work environment under Title VII, that claim would also fail. In order to establish a hostile work environment claim, a plaintiff must establish that: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment and (5) the defendant knew or should have known about the harassment and failed to take action. *Moore*, 171 F.3d at 1078-79. Harassment affects a term, condition, or privilege of employment "if it is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and creates an abusive working environment." *Id.* at

---

[1] Unless otherwise noted, the facts quoted are undisputed and were submitted in a format that meets the requirements of Rule 56 of the Federal Rules of Civil Procedure.

1079. In this case, Mr. Josky has not alleged facts to support a claim that the harassment to which Mr. Baskerville allegedly subjected him was based on race, nor has he shown that such alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.

Because Mr. Josky has neither provided direct evidence of racial discrimination nor established a prima facie case of racial discrimination or hostile work environment, his claim of racial discrimination in violation of Title VII should be DISMISSED.

### E. **Mr. Josky's Claim of Disability Discrimination Under the ADA**

In order to bring a successful claim for discrimination based on disability under the ADA, an employee must either provide direct evidence of disability discrimination or seek to establish a prima facie case of discrimination that would then be subject to the McDonnell Douglas burden-shifting framework described above. *Sullivan*, 197 F. 3d at 810. Mr. Josky has not provided any direct evidence of disability discrimination; thus, he must show the following to establish a prima facie case: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he suffered an adverse employment action due to his disability. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

The ADA defines a disabled person as "one who (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment, or (3) does not have an impairment, but is regarded as having one." *Sullivan*, 197 F. 3d at 810. Mr. Josky has not alleged that he has a disability, nor has he referred to any record of impairment. *See* Docket No. 1. His claim could therefore only proceed under the third possibility, that he does not have an impairment but is regarded as having one. Nothing

in Mr. Josky's Complaint suggests that any of his co-workers at Asurion believed him to be disabled. *See* Docket No. 1. In his deposition, Mr. Josky did state that Mr. Baskerville had told him that "something could be wrong with [Mr. Josky]" because Mr. Josky was very quiet at work, not making noise like everyone else in the office. Docket No. 22-1, p. 9. Further, it is undisputed that Mr. Baskerville emailed Mr. Josky after Mr. Josky had applied for STD and asked him "are you coming back to work and what's going on?" Docket No. 21, p. 8. Neither of these comments or actions, nor Mr. Baskerville's comments regarding Mr. Josky's work attendance, show that Mr. Baskerville regarded Mr. Josky as having a disability. Even if Mr. Baskerville or others believed that Mr. Josky was in ill health, "a defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled." *Sullivan*, 197. F. 3d at 810.

As previously discussed when examining Mr. Josky's claim of racial discrimination under Title VII, the Court will construe the evidence as supporting a contention that Mr. Josky was otherwise qualified to perform the essential functions of his job; however, Mr. Josky has not alleged facts that would support a claim that he suffered an adverse employment action due to his disability. *See* Docket No. 1. Mr. Josky does not claim that he was fired or demoted. *Id.* It is undisputed that Mr. Josky resigned from his job at Asurion several months after filing for STD and not returning to work. Docket No. 21, p. 8-9. Mr. Baskerville's email to Mr. Josky ("are you coming back to work and what's going on?"), while seeming to express concern for Mr. Josky's well-being, his responsibilities in the workplace, or both, does not give rise to an impression that Mr. Baskerville did not want Mr. Josky to return to work or hoped to dissuade him from doing so. Because Mr. Josky has not provided direct evidence of disability discrimination and has not alleged facts that would demonstrate satisfaction of the three factors

involved in establishing a prima facie case of disability discrimination, Mr. Josky's claim of disability discrimination should be DISMISSED.

### III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' "Motion for Summary Judgment" (Docket No. 19) be GRANTED and that the Court dismiss this action with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge